UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| DANIEL MENDEZ, *et al*, | § | |
| | § | |
| Plaintiffs, | § | |
| vs. | § | CIVIL ACTION NO. H-09-490 |
| | § | |
| TIMBERWOOD CARPENTRY & RESTORATION, LLC, *et al*, | § § | |
| | § | |
| Defendants. | § | |

## **MEMORANDUM OPINION AND ORDER**

**I.   INTRODUCTION**

Pending before the Court is the defendant's, Tomac of Florida, Inc. d/b/a Global Restoration Group ("Global Restoration Group"), motion for summary judgment (Docket No. 19). The plaintiffs, Daniel Mendez, Gabriel Lopez, Reina Elizabeth Martinez, Fabian Resendiz, Edwin Hernandez, Graciela Gomez, Jose Rolando Rodriguez, Shasta S. Brown, and Juan De La Cruz (the "plaintiffs"), have filed a response in opposition to the motion (Docket No. 20), and Global Restoration Group has filed a reply (Docket No. 21). On June 12, 2009, the Court entered an order informing the parties that Global Restoration Group's motion would be taken under advisement and that the plaintiffs would be given until September 1, 2009, to conduct further discovery and show proof why summary judgment should not be granted in Global Restoration Group's favor (Docket No. 22). On August 31, 2009, the plaintiffs filed their supplemental response in opposition to Global Restoration Group's motion (Docket No. 31), and Global Restoration Group filed its supplemental reply (Docket No. 32). After having carefully considered the parties' submissions, the record, and the applicable authorities, the Court is of the opinion that Global Restoration Group's motion for summary judgment should be GRANTED

on the plaintiffs' claim brought pursuant to the Fair Labor Standards Act. As such, the Court declines to exercise supplemental jurisdiction over the plaintiffs' claim against Global Restoration Group brought pursuant to the Texas Labor Code and hereby dismisses it without prejudice.

## II.  FACTUAL BACKGROUND

In September of 2008, the plaintiffs traveled to Houston, Galveston, and surrounding areas in Texas seeking work rebuilding and cleaning up damages arising from Hurricane Ike. Upon their arrival in Texas, the plaintiffs found employment with Timberwood Carpentry & Restoration, LLC ("Timberwood"). It appears that prior to the plaintiffs' employment with Timberwood, Timberwood had entered into an agreement with Global Restoration Group to provide skilled labor for storm-related restoration work for entities with whom Global Restoration Group had contracted. The parties' business arrangement was memorialized in an Independent Subcontractor Agreement dated August 30, 2008, which extensively covered issues concerning services, equipment and supplies, compensation, insurance, non-disclosure, indemnification, non-solicitation, governing law and arbitration (the "ISA"). Specifically, the ISA provided, in relevant part, as follows:

> **ARTICLE 1.  PURPOSE OF THE AGREEMENT**
>
> > This Agreement is entered into between Global Restoration and the Contractor in order to set forth the terms under which Contractor will provide services to Global Restoration and to define the independent contractor relationship that will exist between Global Restoration and the Contractor.
>
> . . .
>
> **ARTICLE 4.  SERVICES**
>
> > Contractor will perform services . . . as needed on a project-by-project basis. The scope of Services to be provided by contractor

on each project will be described on a PROJECT MEMORANDUM . . . , a blank copy of which is attached hereto as Exhibit "A." Subject to the provisions of Article 10 herein, Contractor is not restricted from performing services for other customers so long as the performance of those services does not interfere with the performance of this contract.

Global Restoration does not intend to control or direct in any manner the conduct of Contractor's work, but is interested solely in the results of the product, which is obtained. The manner and means by which the Contractor carries out the terms of this Agreement are within the Contractor's sole discretion, and Contractor has complete and total authority to control and direct the performance of the work, subject only to Global Restoration's right of inspection and supervision, to secure satisfactory completion of the terms of this Agreement.

. . .

Contractor will comply with the Immigration Reform and Control Act (IRCA) and . . . the I-9 employment verification requirements when supplying labor. Only those individuals who are able to provide employment eligibility will be utilized for this Project.

ARTICLE 5.   EQUIPMENT AND SUPPLIES

The Contractor shall provide and maintain at Contractor's sole expense all vehicles, equipment and supplies necessary for the performance of the Services. . . . In the event that Global Restoration allows Contractor access to or use of any equipment ("Leased Equipment") under the custody and control of Global Restoration of Global Restoration's customer, Contractor agrees to return such Leased Equipment in the same condition, less ordinary wear and tear, as when provided to Contractor.

ARTICLE 6.   COMPENSATION

In exchange for the timely and satisfactory performance of the Services, Global Restoration Group agrees to pay Contractor . . . for each Project as described in the relevant Project Memorandum initialed by the parties . . . .

Upon payment of any invoices, Contractor's acceptance of payment shall act as Contractor's release and waiver of all liens by affidavit or otherwise with respect to the Project (or the portion thereof) which is the subject of the invoice. Contractor agrees to

> provide releases as requested by Global Restoration for any Project (or portion thereof) in which payment has been made to Contractor.
>
> As an independent contractor, Contractor is not entitled to unemployment compensation from Global Restoration. The Contractor understands that in the event of injury or death to Contractor and/or Contractor's agents and/or employees during the course of this Agreement that Contractor or Contractor's agents or employees are not entitled to worker's compensation or other benefits for work-related injuries from Global Restoration.
>
> . . .

(*See* Docket Entry No. 31, Ex. 1 –A). The term "Contractor" within the meaning of the ISA is defined to include "Timberwood"; and the term "Global Restoration" is defined to include "Global Restoration Group." The scope of the services to be performed by Timberwood under the ISA, as detailed on Exhibit A, included "skilled labor for restoration storm related work." *Id.* On September 12, 2008, Timberwood assigned its rights and duties under the ISA to Demco, Inc., ("Demco").

On February 19, 2009, the plaintiffs filed the instant action against Timberwood, Global Restoration Group and other named defendants, asserting violations of the Fair Labor Standards Act ("FLSA") and the Texas Labor Code. The plaintiffs contend that the defendants required them to work off the clock, failed to pay them for such work, and failed to pay overtime wages at the federally mandated rate. Both the FLSA and the Texas Labor Code limit the plaintiffs' claims to an "employer." In their Complaint, the plaintiffs contend that Global Restoration Group was one of their employers and/or a joint employer with Timberwood and/or Demco. Global Restoration Group, however, seeks judgment as a matter of law on the plaintiffs' claims under the FLSA and the Texas Labor Code, asserting that it was not the plaintiffs' employer, either directly or as a joint employer.

### III. CONTENTIONS OF THE PARTIES

#### A. Global Restoration Group's Contentions

Global Restoration Group contends that summary judgment should be granted in its favor as to all claims asserted by the plaintiffs. It asserts that both the FLSA and the Texas Labor Code limit the plaintiffs' causes of action to an "employer." To this end, Global Restoration Group contends that it is not presently, nor has it ever been, an "employer" of any of the plaintiffs. It further alleges that the plaintiffs have failed to offer any evidence to support their claim that it qualifies as an "employer" under either the FLSA or the Texas Labor Code. Therefore, Global Restoration Group argues that no genuine issue of material fact exists as to its employer status and it is entitled to judgment as a matter of law on all of the plaintiffs' claims.

#### B. The Plaintiffs' Contentions

In opposition to Global Restoration Group's motion for summary judgment, the plaintiffs set forth essentially three arguments. First, the plaintiffs assert that Global Restoration Group is an "employer" under the statutory definition of the FLSA and the regulations accompanying it. Second, the plaintiffs argue that Global Restoration Group's intent, as expressed in the ISA, was to be their employer. Third, the plaintiffs contend that Global Restoration Group possessed sufficient control over them to qualify as an "employer" under the FLSA. As support for their contention, the plaintiffs contend that Global Restoration Group dictated the standard payment rates and overtimes rates governing their pay, procured the actual contract assigned to Timberwood and/or Demco, and generally exercised ultimate responsibility to ensure that they performed their work properly.

## IV. STANDARD OF REVIEW

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). The moving party bears the initial burden of "informing the Court of the basis of its motion" and identifying those portions of the record "which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party meets its burden, the nonmoving party must then "go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324 (quoting FED. R. CIV. P. 56(c), (e)). "[C]onclusional allegations, unsubstantiated assertions, or only a scintilla of evidence" is not sufficient to defeat a motion for summary judgment. *Colindres v. Quietflex Mfg.*, 427 F. Supp.2d 737, 751 (S.D. Tex. 2006) (quoting *Reaves Brokerage Co. v. Sunbelt Fruit & Veg. Co.*, 336 F.3d 410, 413 (5th Cir. 2003)).

In adjudicating a motion for summary judgment, a court is required to view all facts in the light most favorable to the nonmoving party and any inconsistencies are to be resolved in the nonmoving party's favor. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). During this time, a court must also look to the substantive law underlying the lawsuit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "[T]he substantive law will identify which facts are material." *Id*. "A dispute regarding a material fact is 'genuine' if the evidence would permit a reasonable jury to return a verdict in favor of the nonmoving party." *Roberson v. Alltel Info. Servs.*, 373 F.3d 647, 651 (5th Cir. 2004). Thus, "[t]he appropriate inquiry [on summary judgment] is 'whether the evidence presents a sufficient disagreement to require

submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Septimus v. Univ. of Houston*, 399 F.3d 601, 609 (5th Cir. 2005) (quoting *Anderson*, 477 U.S. at 251-52).

## V. ANALYSIS AND DISCUSSION

### A. The Plaintiffs' Claim Under the Fair Labor Standards Act

The plaintiffs argue that Global Restoration Group is liable under the FLSA for its failure to pay them overtime wages, and in some instances, straight-time wages. Specifically, they contend that Global Restoration Group qualifies as an "employer" under the FLSA and/or as a "joint employer" with Timberwood and/or Demco under the language of the regulations accompanying the FLSA. The relevant section of the FLSA provides as follows:

> [N]o employer shall employ any of his employees who in any workweek engaged in commerce or in the production of goods for commerce . . . for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed.

29 U.S.C. § 207(a)(1). The term "employer," within the meaning of the FLSA, is broadly defined to include "any person acting directly or indirectly in the interest of an employer in relation to an employee . . . ." *Id.* § 203(d). "Whether an entity is an employer for the purpose of the FLSA turns on the 'economic reality' of the working relationship." *Itzep v. Target Corp.*, 543 F. Supp.2d 646, 652 (W.D. Tex. 2008) (citing *Goldberg v. Whitaker House Co-op., Inc.*, 366 U.S. 28, 33, 81 S. Ct. 933, 6 L.Ed.2d 100 (1961)). "The Fifth Circuit has held that the FLSA's definition of 'employer' is 'sufficiently broad to encompass an individual who, though lacking a possessory interest in the 'employer' corporation, effectively dominates its administration or otherwise acts, or has the power to act, on behalf of the corporation vis-a-vis its employees.'" *Itzep*, 543 F.Supp.2d at 652 (citing *Reich v. Circle C. Invs., Inc.,* 998 F.2d 324, 329 (5th Cir.

1993) (*quoting Donovan v. Sabine Irrigation Co., Inc.,* 695 F.2d 190, 194-95 (5th Cir. 1983)).

The FLSA also recognizes the prospect of multiple employers. *Itzep*, 543 F. Supp.2d at 652. In this regard, "a single individual may be the employee of two or more employers at the same time." *Id.* Regulations issued by the Wage and Hour Division of the United States Department of Labor suggest that a "joint employment" relationship characteristically arises under the following circumstances:

> when there is an arrangement between employers to share an employee's services; one employer is acting directly or indirectly in the interest of the other employer or employers in relation to the employee; the employers are associated with one another, directly or indirectly, with respect to the employment of the employee because one employer controls, is controlled by, or is under common control with the other employer.

*Itzep*, 543 F. Supp.2d at 652 (citing 29 C.F.R. § 791.2(b)). Such regulations imply that the issue of whether a joint employment relationship exists within the meaning of the FLSA is dependent on the facts presented in each case. More specifically, the regulations indicate that:

> [a] determination of whether the employment by the employers is to be considered joint employment or separate and distinct employment for purposes of the act depends upon all the facts in the particular case. If all the relevant facts establish that two or more employers are acting entirely independently of each other and are completely disassociated with respect to the employment of a particular employee, who during the same workweek performs work for more than one employer, each employer may disregard all work performed by the employee for the other employer (or employers) in determining his own responsibilities under the Act.

29 C.F.R. § 791.2(a).

Courts have considered several factors in determining whether a defendant entity qualifies as an "employer" within the meaning of the FLSA and no single factor is dispositive of an entity's "employer" status under the FLSA; rather, such status depends "upon the

circumstances of the whole [employment] activity." *Itzep*, 543 F. Supp.2d at 652 (citing *Rutherford Food Corp. v. McComb*, 331 U.S. 722, 730, 67 S. Ct. 1473, 91 L.Ed. 1772 (1947)). The Fifth Circuit has long recognized that when determining whether a defendant corporation is an "employer" or "joint employer" under the FLSA, the totality of the employment situation must be examined with particular regard to the following five questions:

> (1) Whether or not the employment takes place on the premises of the company?; (2) How much control does the company exert over the employees?; (3) Does the company have the power to fire, hire, or modify the employment conditions of the employees?; (4) Do the employees perform a 'specialty job' within the production line?; and (5) May the employee refuse to work for the company or work for others?

*Wirtz v. Lone Star Steel Co.*, 405 F.2d 668, 669 - 70 (5th Cir. 1968); *see also Itzep*, 543 F. Supp.2d at 653. Because the determination of an employee's status for purposes of the FLSA tends to focus on the economic dependence and reality of the working relationship, the Fifth Circuit has also adopted the "economic reality" test which encompasses inquires into whether the purported employer: "(1) ha[d] the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records.'" *Watson v. Graves*, 909 F.2d 1549, 1553 (5th Cir. 1990) (internal citations omitted); *see also Itzep*, 543 F. Supp.2d at 653. Further, the Second Circuit, in reliance on the United States Supreme Court's decision in *Rutherford Food Corp. v. McComb*, has reasoned that the definition of the term "employ" within the meaning of the FLSA cannot be confined to mere "formal control" over the performance of an employee's work and should include inquiries into the following six factors:

> (1) whether [the purported employer's] premises and equipment were used for the plaintiffs' work; (2) whether the [contractor] had a business that could or did shift as a unit from one putative joint

> employer to another; (3) the extent to which plaintiffs performed a discrete line-job that was integral to [the purported employer's] process of production; (4) whether responsibility under the contracts could pass from one subcontractor to another without material changes; (5) the degree to which the [purported employer] or [its] agents supervised the plaintiffs' work; and (6) whether plaintiffs worked exclusively or predominantly for the [purported employer].

*Zheng v. Liberty Apparel Co.*, 355 F.3d 61, 72 (citing *Rutherford*, 331 U.S. at 724-25, 730, 67 S. Ct. 1473) (other citation omitted)). The *Zheng* court noted that the aforementioned factors are relevant "because when they weigh in plaintiffs' favor, they indicate that an entity has functional control over workers even in the absence of . . . formal control. *Id.*

Here, the plaintiffs argue that as a result of Global Restoration Group's interrogatory responses and documents produced, it is abundantly clear that Global Restoration Group qualifies as their "employer" under the FLSA. (Docket Entry No. 31 at 2). They contend that by way of the discovery obtained and submitted to this Court, they have sufficiently established that Global Restoration Group is a joint employer along with Timberwood and/or Demco of the plaintiffs and all others similarly situated. This Court disagrees. In the approximate two-and-one-half month period given to the plaintiffs to conduct discovery on this very issue, the plaintiffs have failed to produce a scintilla of evidence in support of their assertion that Global Restoration Group acted "directly or indirectly in the interest of" an employer in relation to them so as to constitute their "employer" or a "joint employer" with Timberwood and/or Demco for purposes of the FLSA.

First, a review of Global Restoration Group's answers to plaintiffs' interrogatories merely illustrates an acknowledgment by Global Restoration Group that Timberwood was, indeed, its independent contractor. This acknowledgement, without more, not only fails to further the plaintiffs' position that Global Restoration Group was their direct employer and/or a joint

employer with Timberwood and/or Demco, but actually demonstrates a recognition by Global Restoration Group, and essentially by the plaintiffs, that the two entities were engaged in a standard independent subcontracting arrangement—a relationship that the law resists deeming as a dual employment situation. *See Zheng*, 355 F.3d at 74 n.11. Moreover, additional responses elicited from Global Restoration Group's answers to plaintiff's interrogatories indicate that Global Restoration Group has no possessory or ownership interest in Timberwood and/or Demco and that it did not directly employ or pay wages to the plaintiffs in connection with the plaintiffs' work made the basis of this lawsuit.

Second, the record in the present case demonstrates that Timberwood performed storm-related restoration work for Global Restoration Group under contracts that were consistent with "typical, legitimate subcontracting arrangement[s]." *Zheng*, 355 F.3d at 75. This fact is buttressed by the plain language of the ISA. Specifically, Article 4 of the ISA, entitled "Services," provides that "[t]he manner and means by which the Contractor carries out the terms of this Agreement are within the Contractor's sole discretion, and the Contractor has complete and total authority to control and direct the performance of the work, subject only to Global Restoration's right of inspection and supervision, to secure satisfactory completion of the terms of this Agreement." (Docket Entry No. 31, Ex. 1 –A). Although Article 4 does vest certain supervisory rights in Global Restoration Group, such rights extend only to securing "satisfactory completion of the terms of this Agreement" or quality of the work to be performed under the ISA and has no bearing on Global Restoration Group's "employer" status. *Id.* In *Zheng*, for instance, the Second Circuit reasoned that "extensive supervision [by a general contractor over the work of an individual employed by a subcontractor] weighs in favor of joint employment *only* if it demonstrates effective control of the terms and conditions of the plaintiff's employment."

*Zheng*, 355 F.3d at 75 (citing *Rutherford*, 331 U.S. at 726, 67 S. Ct. 1473) (emphasis added). The *Zheng* court further reasoned that "[b]y contrast, supervision with respect to contractual warranties of quality and time of delivery has no bearing on the joint employment inquiry, as such supervision is perfectly consistent with a typical, legitimate subcontracting arrangement." *Zheng*, 355 F.3d at 75 (citing *Moreau v. Air France*, 343 F.3d 1179, 1188 (9th Cir. 2003) (internal citations omitted).

Third, Article 4's provision requiring Timberwood and/or Demco, as Contractor, to comply with the Immigration Reform and Control Act (IRCA) and the I-9 employment verification requirements when supplying labor, implies that Global Restoration Group was cognizant of applicable wage and labor laws and expected those with whom it subcontracted with to fully comply with such laws. (*See* Docket Entry No. 31, Ex. 1 –A). Further, Article 5 of the ISA, entitled "EQUIPMENT AND SUPPLIES," indicates that Timberwood--not Global Restoration Group, was responsible for providing and maintaining all materials and equipment necessary for the plaintiffs' job completion at its own expense. (*Id.*)

Notwithstanding the aforementioned, the plaintiffs contend that Global Restoration Group is their general contractor and primary employer because it represented such in the ISA. As support for their contention, the plaintiffs rely on a provision within Article 10 of the ISA, entitled "NON SOLICITATION," which states that "[d]uring the term of this Agreement and for one year after termination of the Agreement, regardless of the reason for termination, Contractor and those under the control of Contractor shall not directly or indirectly solicit or perform work as a general contractor to any Customer of Global Restoration." (*See* Docket Entry No. 31, Ex. 1 –A). The plaintiffs appear to direct the Court to this provision in an effort to establish that in accordance with the terms of the ISA, they were required to work exclusively or predominately

for Global Restoration Group. Nevertheless, the provision cited by the plaintiffs as support for this position constitutes nothing more than a standard non-solicitation provision, which is typical of most subcontracting arrangements and has no bearing on Global Restoration Group's "employer" status. Moreover, the language contained in Article 4 of the ISA defeats the plaintiffs' argument that pursuant to the terms of the ISA they were required to work exclusively or predominately for Global Restoration Group. Specifically, the pertinent language provides, "[s]ubject to the provisions of Article 10 herein, Contractor is not restricted from performing services for other customers so long as the performance of those services does not interfere with the performance of this contract." *Id.* This language is indicative of a typical outsourcing arrangement.

As further support for their contention that Global Restoration Group was their "joint employer," the plaintiffs direct the Court to Exhibit A of the ISA which defines the scope of the work to be performed under the ISA and the rate of compensation. Specifically, they contend that Exhibit A demonstrates that Global Restoration Group dictated how much Timberwood would be paid, based solely on the number of hours worked by each plaintiff, and further dictated the amount to be paid to "Timberwood under the contract solely in the form of an hourly base and overtime rate." This assertion, without more, however, is insufficient to establish that Exhibit A was included in the ISA at the insistence of Global Restoration Group or that Global Restoration Group was responsible for determining the plaintiffs' rate of pay and method of payment. In fact, a review of Exhibit A appears to suggest quite the contrary, as this provision appears to have been bargained for by *both* Timberwood and Global Restoration Group; and changes to the rates of compensation appear to have been made and initialed by Fernando Nava, Timberwood's president. Thus, when viewing the provision in the light most favorable to the

plaintiffs, the Court determines that the provision fails to create a fact issue as to whether Global Restoration Group established the plaintiffs' rate of pay.

Finally, in a last-ditch effort to demonstrate that Global Restoration Group exercised "functional control" over them, the plaintiffs allege that Global Restoration Group, not Timberwood, contracted with various cities in Texas to perform construction work, while Timberwood's role and function was limited to providing skilled labor to Global Restoration Group so that it could fulfill its contractual obligations. This allegation, standing alone, fails to remove the relationship between Global Restoration Group and Timberwood from that of a "typical, legitimate subcontracting arrangement." Further, the plaintiffs provide only conclusory allegations and submit no evidence demonstrating that Global Restoration Group controlled their work or day-to-day operations such that it should be held to be their direct employer or that of any potential opt-in plaintiffs. Finally, the plaintiffs' reference to Global Restoration Group's website is irrelevant and has no bearing on its "employer" status.

Based on the applicable law and the undisputed facts presented, the Court determines that Global Restoration Group is not an "employer" of the plaintiffs within the meaning of the FLSA. The plaintiffs have set forth no evidence demonstrating that Global Restoration Group had an ownership interest in Timberwood and/or Demco or that it controlled their day-to-day operations. Rather, the evidence in the record relative to the distribution of tasks and supervision between Timberwood and/or Demco and Global Restoration Group is consistent with that of a "typical, legitimate subcontracting arrangement." Mainly, the plaintiffs have not alleged or provided evidence demonstrating that they worked directly for Global Restoration Group or that it: (1) had the power to hire and/or fire them; (2) supervised or controlled their work schedules or employment conditions; (3) supplied them with the materials needed to complete their jobs;

(4) maintained their employment records; (5) required their work to be performed on its premises; (6) required them to perform a specialty job on a production line; (7) required them to perform their job as part of an integrated unit of production; or (8) possessed functional control over them under any relevant factor. Consequently, there is insufficient evidence to raise a fact issue as to whether Global Restoration Group qualifies as the plaintiffs' "employer" or as a joint employer with Timberwood and/or Demco under the FLSA. Thus, Global Restoration Group is entitled to judgment as a matter of law on the plaintiffs' FLSA claim.

### B. The Plaintiffs' Claim Under the Texas Labor Code

As courts of limited jurisdiction, federal courts are limited to adjudicating claims that either arise under the Constitution, laws and treaties of the United States or involve matters where the amount in controversy exceeds $75,000 and diversity of citizenship exists. *See* 28 U.S.C. § § 1331, 1332. In this case, the plaintiffs filed their Original Complaint pursuant to the statute governing federal question jurisdiction and the Court found that it had supplemental jurisdiction over the plaintiffs' related state law claim under the Texas Labor Code. Because this Court has determined that the plaintiffs' sole federal claim against Global Restoration Group should be dismissed, no federal question remains. Thus, only the plaintiffs' state law claim brought pursuant to the Texas Labor Code remains. In deciding whether to exercise supplemental jurisdiction over this claim, the Court is guided by 28 U.S.C. § 1367, which grants federal courts jurisdiction over state law claims under limited circumstances. *See* 28 U.S.C. § 1367(a). "While under § 1367(a) a district court properly exercises supplemental jurisdiction over state law claims that are part of the same case or controversy over which the district court has original jurisdiction, § 1367(c)(3) provides that a district court 'may decline to exercise supplemental jurisdiction over a claim under subsection (a) if . . . the district court ha[s]

dismissed all claims over which it has original jurisdiction.'" *Noble v. White*, 996 F.2d 797, 799 (5th Cir. 1993) (quoting 28 U.S.C. § 1367(c)(3)).

Moreover, the United States Supreme Court, in *Carnegie-Mellon*, has reasoned that "in the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine--judicial economy, convenience, fairness, and comity, will point toward declining to exercise jurisdiction over the remaining state-law claims." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7, 108 S. Ct. 614, 619, 98 L.Ed.2d 720 (1988)). Further, the "general rule [in the Fifth Circuit] is to dismiss state claims when the federal claims to which they are pendent are dismissed." *Parker & Parsley Petroleum Co. v. Dresser Indus.,* 972 F.2d 580, 585 (5th Cir. 1992) (citing *Wong v. Stripling,* 881 F.2d 200, 204 (5th Cir. 1989). Accordingly, this Court exercises its discretion, pursuant to 28 U.S.C. § 1367, and declines to exercise supplemental jurisdiction over the plaintiffs' state law claim against Global Restoration Group brought pursuant to the Texas Labor Code.

## VI. CONCLUSION

Based on the foregoing, Global Restoration Group's motion for summary judgment on the plaintiffs' FLSA claim is GRANTED. Having dismissed the sole federal claim over which this Court had original jurisdiction, the Court declines to exercise supplemental jurisdiction over the plaintiffs' state-law claim against Global Restoration Group brought pursuant to the Texas Labor Code. Therefore, such claim is dismissed without prejudice.

It is so **ORDERED**.

SIGNED at Houston, Texas this 9th day of December, 2009.

_____
Kenneth M. Hoyt
United States District Judge